## Marcus Sachs, Appellant, v. Simon Sachs et al., Defendants.

## Daniel A. Campbell, Appellee.

## Gen. No. 18,245.

1. BANKS—*where postal receipts are deposited as separate account.* Where a branch postal station is located in a drug store and a partner in the drug business, appointed deputy clerk for the sale of money orders, deposits the postal order receipts in a bank in the firm name in a separate account, headed ''Station Receipts,'' and makes daily reports to the postmaster and sends a check for the amount of the receipts each day, a receiver, who is placed in charge of the drug business in an action between the partners, is properly required to pay over to the postmaster the fund so deposited.

Appeal from the Circuit Court of Cook county; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 29, 1913.

SILBER, ISAACS, SILBER & WOLEY and PETER G. RAFF, for appellant MARCUS SACHS; FREDERICK D. SILBER, of counsel.

L. C. COOPER, for appellee DANIEL A. CAMPBELL.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by Marcus Sachs from an order entered by the chancellor, requiring Henry D. Raff, receiver, to pay over certain funds to Daniel A. Campbell, the postmaster of the United States Government at Chicago.

About June 17, 1905, Marcus Sachs and his son, Simon Sachs, became partners in the drug business. This continued for a number of years when, it is alleged, Simon Sachs sold the partnership property and

formed a corporation, doing the same business as had been done by the partnership. During the existence of the partnership Simon Sachs was appointed a deputy clerk for the sale of postal money orders, with a branch station in the drugstore of the firm. Each day he deposited the moneys received from the sale of postal money orders in the West Side Trust & Savings Bank. The checking account with the bank was in the firm name, but the deposits were made with two deposit slips, one showing the receipts from the sales of postal money orders, and the other the total amount of deposits of the drugstore business and of sales of postal money orders. The account was kept by the bank in this manner, the deposits of postal order receipts being kept in a separate account under the heading "Station Receipts." Each day Simon Sachs made a report of the sales of postal orders to Daniel A. Campbell, the postmaster, and attached thereto a check to the postmaster's order on the bank for the money deposited as "Station Receipts" for the period covered by the report.

Marcus Sachs filed a bill alleging misapplication of the partnership funds by Simon Sachs, and obtained the appointment of a receiver of the corporation. The receiver took possession of the funds deposited in the bank about April 12, 1911. Subsequently Daniel A. Campbell filed his petition in said cause, setting forth that he was the postmaster of the city of Chicago for the United States Government, and that Simon Sachs had been appointed as an agent for the sale of money orders in the branch station located in the drugstore in which the said corporation was doing business; that it was the duty of Sachs, as such postal clerk, to make daily reports of his sales and to pay over all moneys received therefrom, and that Sachs had been performing his duties in this manner, remittances to the postmaster being made in the form of checks drawn upon the West Side Trust & Savings Bank, pay-

able to Campbell, as postmaster; that Sachs made his daily report for April 10, 1911, showing sales of money orders to the extent of $674.84, and delivered therewith a check payable to the postmaster for said sum of $674.84, dated April 11th and drawn upon said West Side Trust & Savings Bank; that he also presented his daily report for April 11, 1911, showing money order sales to the amount of $300.24, and likewise delivered to the postmaster his check dated April 12th, drawn upon the same bank, for the said sum of $300.24; that said checks were signed ''S. Sachs & Company, Simon Sachs, Treasurer;'' that petitioner presented said checks to the bank for payment but that payment was refused. Said petitioner further represented that the amount of said sales, as shown by said reports and said checks, was correct, and that no person had any interest in said money save said Simon Sachs as clerk, and the petitioner as postmaster. Said petitioner prayed that an order be entered that the money represented by said checks be paid.

Simon Sachs also filed a petition, setting up the same facts as were set up in the petition by Daniel A. Campbell, the postmaster. Said Sachs represented further that the moneys collected by him from the sale of money orders were deposited in said bank by him, as agent of the post office department of the United States Government; also that the receiver who had been appointed by the court had possession of said moneys.

Hearing was had by the court upon these petitions and the answers thereto. It appeared that the receiver had taken possession of $494.04 of the money on deposit in the bank. As stated by a witness, the bank had apparently peremptorily taken five or six hundred dollars of the balance of the deposit to apply on some note. After hearing, the court entered an order upon the receiver to pay over to said Campbell the money theretofore turned over to him by the West Side Trust

& Savings Bank, amounting to $494.04, which order Marcus Sachs, the complainant in the original bill, brings before this court by appeal.

Consideration of the facts above set forth makes it evident that the theory upon which appellant bases his points and argument cannot be maintained, and therefore the cases cited by him are not applicable. Appellant treats this as a case of creditor of a corporation holding certain checks drawn upon the general fund of such corporation. We do not so view the matter. Simon Sachs, as the agent of the United States postmaster, deposited the postal money separate and distinct from the money of his drug business. The bank kept it in a separate account, designated as "Station Receipts." There was no mingling of the funds. The mere physical mixing of the coins or bills is immaterial. The identity of the deposits of the receipts from the sales of postal orders was preserved, so that this fund could be distinguished from all other money, and it is the rule that so long as there is a separate and independent fund, distinguishable from any other fund, it can be followed. The bank's account was, in essence and substance, with the postmaster, and the adoption of a convenient method of checking it out under the firm name did not change the substance of the transaction.

All these facts were within the full knowledge of all the parties concerned, and none will be heard to question the right of the petitioner, Campbell, to the money which rightfully is his.

The view we have taken of this matter disposes of all the questions raised by appellant, so that it is unnecessary to consider them in detail. In our opinion the fund in the account designated "Station Receipts" clearly belonged to the postmaster, Campbell, and the order of the chancellor was right and is affirmed.

*Affirmed.*